# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 18-20760-CV-TORRES

YODALIS IRIANNE PEREZ,

      Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of the Social
Security Administration,

      Defendant.

_____/

## ORDER ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

There are two Motions for Summary Judgment currently pending before this Court. The first, filed on September 7, 2018 by Plaintiff YODALIS PEREZ ("Plaintiff" or "Perez") on behalf of her minor child "D.M.", asks that we reverse the Social Security Administration's decision to deny Plaintiff's claim for disability benefits. [D.E. 22]. The second, filed by Commissioner NANCY A. BERRYHILL ("Defendant" or "the Commissioner") on November 8, 2018, asks that we affirm that decision. [D.E. 24]. Both Motions are fully-briefed and therefore ripe for disposition. After a full review of the record and the legal authorities governing the parties dispute, we will **DENY** Plaintiff's Motion, **GRANT** the Motion filed by Defendant, and **AFFIRM** the decision reached by the Commissioner below.

## I. APPLICABLE LEGAL STANDARDS

A federal court's role in reviewing claims brought under the Social Security Act

involves a determination as to "whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotation marks and citation omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists 'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.' " *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Winschel*, 631 F.3d at 1178). We may not "decide the fact anew, reweigh the evidence," or substitute our own judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) ("Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.").

Despite the deferential standard for review of the Commissioner's factual determinations, no presumption of validity attaches to the ALJ's legal conclusions. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining whether the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

An ALJ must follow a three-step analytical process when determining whether a child is disabled. *See* 20 C.F.R. § 416.924. At step one, the ALJ must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). Substantial gainful activity is paid work that requires significant physical or mental

activity. *See* 20 C.F.R. § 416.910. If the child is not engaged in substantial gainful activity, the ALJ next determines whether the child has an impairment or combination of impairments that: cause marked or severe functional limitations; can be expected to cause death; or has lasted or can be expected to last for a period of at least twelve (12) months. 20 C.F.R. §§ 416.906; 416.924(c). If the child is afflicted with a severe medically determinable impairment, the ALJ must move to step three and determine if the child's impairments meet, medically equal, or functionally equal an impairment found in the Listings, 20 C.F.R. Part 404, Subpart P, Appendix 1 (a "listed" impairment). *See* 20 C.F.R. §§ 416.924(d), 416.926a(a).

An impairment or combination of impairments "functionally equals" a listing if the impairment results in "marked" limitations in two domains of functioning or "extreme" limitations in one domain. 20 C.F.R. § 416.926a(a). These domains are intended to encompass all of what a child can do, and consist of the following: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for his or herself; and (6) overall health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

A marked limitation occurs when the child's impairments interfere seriously with his or her ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). The child's day-to-day functioning may be seriously limited when the child's impairments limit only one activity, or when the interactive and cumulative effects of the child's impairments limit several activities. *Id*. "Marked"

limitations also include limitations that are "more than moderate" but "less than extreme." *Id*. "It is equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id*.

A child has an "extreme" limitation when his or her impairments interfere "very seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). The child's day-to-day functioning may be very seriously limited when the impairments limit "only one activity or when the interactive and cumulative effects of [the child's] impairments limit several activities." *Id*. "Extreme" limitation also means a limitation that is "more than marked," and consists of the rating the Commissioner gives "to the worst limitations." *Id*. "However, 'extreme limitation' does not necessarily mean a total lack or loss of ability to function," but rather is the "equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id*.

## II.     RELEVANT FACTUAL BACKGROUND

On May 9, 2014, Plaintiff applied for supplemental social security income on behalf of her son, D.M., based on alleged hyperactivity, sleeping, and sensory disorders, as well as for behavioral disturbances. [R. at 192, 348]. At the time of his application, D.M. was four years old. The alleged onset date of D.M.'s condition took place on January 1, 2014. *Id*. at 192. The Commissioner denied the initial claim on July 24, 2014, and upon reconsideration on November 17, 2014. *Id*. at 200, 212.

Claimant then filed a written request for a hearing in front of an Administrative Law Judge ("ALJ") on February 10, 2015, which was deemed timely despite the late filing of this request. *Id*. at 223.

The administrative hearing took place in Miami on December 5, 2016. [R. at 171]. ALJ Lornette Reynolds presided. *Id*. at 173. At the hearing, Ms. Perez testified about her son's conditions, stating that he struggles in school when learning new subjects and has trouble following directions. *Id*. at 178. He also struggles with day-to-day activities such as brushing his teeth and clothing himself. *Id*. He has taken Adderall for his attention deficit disorder since he was four years old, and also relies on melatonin to help him sleep. *Id*. at 180. He previously took Vyvanse, Focalin, Concerta, and Intuiv. *Id*. Ms. Perez stated that the medications help "sometimes," but not always. *Id*. at 181. She also described side effects associated with D.M.'s taking of certain medications, including irritability, aggressiveness, and depression. *Id*.

Ms. Perez also discussed D.M.'s "sensory disorders," which allegedly involve his sensitivity to "smells" and the "feeling" of the fabric of his clothing. *Id*. at 182-184. According to his mother, she has difficulty taking him to restaurants because he "throws tantrums" when exposed to certain smells. *Id*. He also talks in his sleep and allegedly sleepwalks three times per week. *Id*. at 184.

In terms of his behavior at school, Ms. Perez testified her son had not "repeated" any grade. *Id*. at 177. He receives one-on-one tutoring with one of his teachers because he allegedly cannot complete his assignments during the school day. *Id*. In his free time, D.M. plays video games on his mother's phone and iPad. *Id*. at

178-79. He also likes to draw, but does not participate in many other after-school activities. *Id.* at 179. D.M. has younger relatives, but his mother claims that the children are "always fighting." *Id.* at 180.

At the time of the hearing, D.M. had been participating in speech therapy and applied behavior analysis. *Id.* at 182. His mother also stated he would soon begin occupational therapy to treat certain sensory disorders. *Id.*

ALJ Reynolds issued her decision on March 8, 2017. *Id.* at 32. At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 9, 2014, the date of his application. *Id.* at 19. At step two, the ALJ found Plaintiff suffered from the following severe impairments: (1) attention deficit hyperactivity disorder; (2) autism spectrum disorder; and (3) chromosomal abnormality. *Id.* Nonetheless, at step three the ALJ determined that these impairments, whether considered singularly or in combination, did not meet or medically equal any listed impairment. *Id.* In doing so, the ALJ found that Plaintiff suffered from "less than marked limitation" in the domains of: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) caring for himself; and (5) overall health and physical well-being. *Id.* at 24-30. The ALJ also found that Plaintiff had no limitation in the functional domain related to moving about and manipulating objects. *Id.* at 29.

The ALJ concluded the decision by finding Plaintiff has not been disabled since the date of his application. *Id.* at 31-32. After the Commissioner denied Plaintiff's appeal on December 29, 2017, *id.* at 1, Perez timely filed suit in this court seeking

review of the Commissioner's determination. [D.E. 1].

### III. ANALYSIS

#### A. *Perez's Appointments Clause Challenge is Untimely*

Plaintiff broadly claims that the entire process by which the ALJ denied his disability request is constitutionally invalid. [D.E. 22, p. 19]. Since this sets forth a purely legal argument, we will begin here.

Pursuant to the Appointments Clause of the United States Constitution, "Officers of the United States" may be appointed only by the President, "Courts of Law," or "Heads of Departments." U.S. CONST. Art. II., § 2, cl. 2; *see also Lucia v. S.E.C.*, – U.S. –, 1138 S. Ct. 2044, 2050 (2018). In *Lucia*, the Supreme Court confronted an Appointments Clause challenge to an ALJ appointed by the Securities and Exchange Commission. *Lucia*, 1138 S. Ct. at 2049-50. In that case, the SEC charged Lucia with misleading investors in connection with retirement products he offered as part of his investment business. *Id.* at 2050. The ALJ ruled that the plaintiff's products were misleading, required him to pay hundreds of thousands of dollars in fines, and banned him from working in the investment industry for the remainder of his career. *Id.*

Lucia appealed the decision to the SEC, arguing that the ALJ who heard his case had not been appointed by a method conforming with the Appointments Clause. *Id.* He then challenged the penalties he received in federal court, where he once again raised his Appointments Clause argument previously set forth before the SEC. *Id.* The D.C. Circuit Court of Appeals denied the challenge, but after the Supreme Court

granted certiorari, it reversed the decision and remanded the case, finding that Lucia's agency appeal should be heard by a different ALJ who had been appropriately appointed. *Id.* at 2055.

Perez now argues that *Lucia* applies to the Social Security Administration and that ALJ Reynolds had not been properly appointed in the method prescribed by the Constitution. [D.E. 22, p. 19-20]. In response, the Commissioner argues that Perez forfeited this claim by failing to raise it at the administrative level. [D.E. 25, p. 15]. Plaintiff, arguing against the waiver challenge raised by the Commissioner, contends that her challenge is timely pursuant to the Supreme Court's decision in *Sims v. Apfel*, 508 U.S. 103, 112 (2000), where the Court found that "Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues."

We agree with the Commissioner and find that Plaintiff waived its Appointments Clause challenge because she failed to argue the issue in the administrative proceedings below.[1] The law is clear that any party making an Appointments Clause challenge must do so in a timely manner. *See Ryder v. United States*, 515 U.S. 177, 182-83 (1995) (emphasis added); *see also Lucia*, 138 S. Ct. at 2055 ("This Court has held that one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief.") (quotation omitted). A "timely" challenge, with regard to the

---

[1] In doing so, we decline to make a determination as to whether Social Security ALJs are "Officers of the United States" subject to the Appointments Clause.

Appointments Clause, is one that is made during the course of the administrative proceedings where the alleged constitutional violation is taking place. Perez did not attack the validity of the ALJ's ability to hear her case in the proceedings below, and so we cannot deem such a challenge "timely" when she raises it for the first time here.[2]

The facts presented by the *Ryder* and *Lucia* cases are instructive. In *Ryder*, the petitioner – a member of the United States Coast Guard – challenged his conviction by court martial. *Ryder*, 515 U.S. at 179. He appealed the conviction to the Coast Guard's Court of Military Review, raising an Appointments Clause challenge to the composition of the issuing court. *Id.* at 179. After the court rejected his Appointments Clause challenge and largely affirmed his conviction, Ryder appealed to the United States Court of Military Appeals, which agreed that two of the three judges on the trial panel had been appointed in violation of the Appointments Clause. *Id.*

---

[2]     Our decision is consistent with a large majority of District Courts that have previously confronted this issue. *See generally Page v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 902, 905 (E.D. Mich. 2018) ("As of this date, the courts that have considered the [Appointments Clause] issue have unanimously rejected attacks on the validity of the ALJ's appointment under *Lucia* brought under 42 U.S.C. § 405(g) where the claimant failed to make a constitutional challenge at the administrative level."); *Britt v. Berryhill*, 2018 WL 628211, at *2 (W.D.N.C. Nov. 30, 2018) (denying motion to remand because claimant failed to raise the Appointments Clause issue during the administrative proceedings); *Hughes v. Berryhill*, 2018 WL 3239835, at *2 n.2 (C.D. Cal. July 2, 2018) ("To the extent *Lucia* applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings."); *Davidson v. Comm'r of Soc. Sec.*, 2018 WL 4680327, at *2 (M.D. Ten.. Sept. 28, 2018) ("Because Plaintiff did not raise her as applied constitutional challenge at the administrative level or argue that she had good cause for her failure to do so, Plaintiff has waived her challenge to the appointment of her Administrative Law Judge.").

Nevertheless, the appellate court affirmed Ryder's conviction on the grounds that the actions of these judges were *de facto* valid. *Id.* at 179-80.

The Supreme Court reversed, finding that the lower court erred when it accorded "*de facto* validity to the actions of the civilian judges of the Court Guard Court of Military Review." *Id.* at 188. In doing so, the Court was persuaded by the fact that "Petitioner challenged the composition of the Coast Guard Court of Military Review while his case was pending before that court on direct review." *Id.* at 182. As Petitioner "raised his objection to the judges' titles before those very judges" and did so "prior to their action on his case," the Court deemed the challenge timely. *Id.* at 182.

Likewise, in *Lucia*, the Court held that the petitioner had raised a "timely" challenge to the appointment of the ALJ who heard his case by "contest[ing] the validity of [the ALJ]'s appointment before the Commission." *Lucia*, 138 S. Ct. at 2055. Lucia continued arguing his claim to both the federal appellate court and the Supreme Court on appeal of his denial. *Id.* Thus, the petitioners in *Ryder* and *Lucia* both raised their Appointments Clause challenges at the administrative level, before the very "entities utilizing the deficiently appointed official or officials." *Abington v. Berryhill*, 2018 WL 6571208, at *2 (S.D. Ala. Dec. 13, 2018).

Here, Plaintiff failed to raise a timely challenge ALJ Reynolds' ability to hear the case at the administrative level. If Perez truly wished to argue the Appointments Clause issue, *Lucia* and *Ryder* required her to have done so either during the proceedings before ALJ Dent, or to the Appeals' Council after the ALJ issued his

decision. She did neither, and as such, her argument is rejected.

**B.    *The ALJ Did Not Violate Plaintiff's Due Process Rights***

Plaintiff next argues that the ALJ failed to develop the record as to her son's claimed sleepwalking disorder, and that in doing so violated Perez's due process rights. [D.E. 22, p. 4-5]. This claim stems from what Plaintiff describes as the ALJ denying her the opportunity to testify as to the details of Plaintiff's sleepwalking, and because the ALJ relied on a medical report that was allegedly missing a single page. [D.E. 22, p. 6]. Perez contends that this failure is "especially egregious" in light of the fact that the ALJ did not find the sleepwalking disorder to be a "severe impairment." [R. at 19].

The due process argument is unavailing for three reasons. First, "the claimant bears the burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim." *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The regulations similarly provide that the burden is on the claimant to submit evidence or inform the Social Security Administration about evidence that relates to the issue of whether he or she is disabled. 20 C.F.R. §§ 404.1512(a), 416.912(a). Plaintiff's claim that one of the medical records contained a missing page did not impose an obligation on the ALJ to recontact the consultative examiner when, as discussed below, the record was more than sufficient for the ALJ to make an informed decision as to D.M.'s disability.

Indeed, the ALJ's only burden with respect to obtaining or seeking a claimant's existing medical records is to:

make an initial request for evidence from your medical source of entity that maintains your medical sources' evidence, and, at any time between 10 and 20 calendar days after the initial request, if the evidence as not been received, we will make one follow-up request to obtain the medical evidence necessary to make a determination.

20 C.F.R. § 404.1512(b)(1)(i). Plaintiff does not allege that the ALJ failed to comply with these regulatory requirements, and as such, there was no error in the ALJ's alleged failure to proactively seek and obtain the additional medical records in the form of the missing page. *See Angel v. Comm'r of Soc. Sec. Admin.*, 2018 WL 4275420, at *13 (N.D. Ga. Sept. 6, 2018) (denying claimant's due process claim based on argument that ALJ failed to consider missing medical records spanning six years); *cf. Rease v. Barnhart*, 422 F. Supp. 2d 1334, 1373 (N.D. Ga. 2006) (ALJ deprived *pro se* claimant of due process when he failed to subpoena medical psychological records specifically requested by applicant at hearing).

Second, the ALJ developed a full and fair record before making her disability determination, which was all she was required to do. "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). However, the Eleventh Circuit has also held that an ALJ need not order additional evidence "as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). The substantial evidence supports the ALJ's decision, with or without the single missing page from a consultative examining report, because the record in its entirety contained more than enough evidence for the ALJ to make an

informed decision. *See Johnson v. Comm'r, Soc. Sec. Admin.*, 618 F. App'x 544, 551 (11th Cir. 2015) ("Where the record contains sufficient evidence to allow an informed decision…the duty to fully and fairly develop the record does not impose the requirement to order a consultative examination.").

In essence, Plaintiff's argument seems to be that had the single missing page been included in the record, and had she been allowed to give additional testimony about D.M.'s alleged sleepwalking condition, the ALJ would have changed her decision and made a finding of disability. This is rote speculation, without any evidentiary support to reach such a conclusion.[3] *See Wilcox v. Comm'r of Soc. Sec.*, 2018 WL 4042145, at *5, n.7 ("[T]he plaintiff *must show* that but for the ALJ's mistake, the evaluation of the cumulative evidence would have resulted in a favorable disability decision.") (emphasis added); *Robinson v. Berryhill*, 2018 WL 3214781, at *10 (N.D. Fla. June 15, 2018) ("Although Plaintiff suggests the record is incomplete and relies on general references to information that should have been considered, except as noted herein, Plaintiff has not identified evidence *in this* record, whether considered by the ALJ or otherwise, that supports his contention that he is disabled after November 1, 2014, as determined by the ALJ.") (emphasis original).

Third, the Eleventh Circuit has stated that "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded." *Graham v. Apfel*, 129 F.3d 1420,

---

[3] Further, this claim is entirely undermined by the ALJ's thorough discussion of the medical records contained in D.M.'s file, which clearly allowed the ALJ to make an informed decision as to D.M.'s condition.

1423 (11th Cir. 1997). In determining whether to remand for further development, the court "should be guided by whether the record reveals any evidentiary gaps which result in unfairness or clear prejudice." *Id*. No such prejudice occurred here, as there is more than enough evidence showing that the ALJ made an informed decision based on the entirety of the submitted medical records. That evidence supported a finding that D.M. was not disabled, and Plaintiff fails to demonstrate how the alleged "evidentiary gap" – consisting of a single missing page and the lack of testimony about sleepwalking at the hearing – caused the ALJ to make an unfair determination. For these reasons, no due process violation occurred, and remand is inappropriate on this basis. *Cf. Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995) (ALJ did not fulfill his duty to develop the record when he failed to contact physician for up-to-date medical records even though *pro se* claimant testified she had been examined by the physician twice just prior to the hearing and where he agreed to procure report).

## C.    *The ALJ Did Not Err at Step Two*

Plaintiff's next challenge involves her claim that the ALJ did not properly consider all of the child's severe impairments at step two. [DE. 3-4]. Perez argues that the ALJ failed to determine that her child's sleep disorder qualified as a "severe impairment," and therefore committed reversible error. *Id*. at p. 4.

We disagree. The Eleventh Circuit has stated that "[n]othing requires that the ALJ must identify, at step two, *all* of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) (emphasis added); *see also Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)

("[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two."); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("[S]tep two requires only a finding of at least one severe impairment to continue on to the later steps.") (quotation omitted); *Packer v. Comm'r of Sec. Sec.*, 542 F. App'x 890, 892 (11th Cir. 2013) ("[T]he ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied. Indeed, since the ALJ proceeded beyond step two, any error in failing to find that [the claimant] suffers from the additional severe impairments of degenerative joint disease of the right knee or varicose veins would be rendered harmless.").[4]

Here, even if we agree with Plaintiff that the ALJ erred in failing to find the alleged sleep disorder to be a "severe" impairment, any such failure would be harmless. The ALJ found that Plaintiff had several severe impairments, including attention deficit hyperactivity disorder, autism spectrum disorder, and chromosomal abnormality. [R. at 19]. The ALJ then continued the sequential evaluation process and considered the sleep disorder at later steps, a point Plaintiff concedes. [D.E. 22

---

[4]     Although we recognize that the cases cited in our analysis involve Step Two determinations made in adult disability cases, and that the definitions for severity of an impairment differ in adult and child disability claims, those distinctions do not affect our analysis. We are determining whether the ALJ erred in failing to classify Plaintiff's child's sleep disorder as a severe impairment at Step Two, and the difference between the two definitions of "severe" is irrelevant in determining whether such an error requires remand or is harmless. As the Eleventh Circuit has made clear that it subscribes to the latter theory, we may rely on adult disability to claims to guide our analysis of whether such an error occurred at Step Two.

at p. 4; R. at 20-21]. Accordingly, any error in failing to find the alleged sleep disorder to be a "severe" impairment is harmless.

### D. *The Opinion Evidence*

Plaintiff's fourth argument involves her claim that the ALJ erred in affording little weight to the medical opinions offered by Dr. Richard S. Bennett, Dr. Gloria Diaz-Medina, and Christy Costa, Plaintiff's kindergarten and first-grade teacher. [D.E. 22, pp. 11-19]. Both doctors found D.M. to have experienced "extreme" or "marked" limitations in five of the six domains of functioning, which, according to Plaintiff, should have resulted in a finding that Plaintiff functionally equals the listed impairments. *Id*. at 11. He also argues that Ms. Costa's opinion was entitled to greater weight. *Id*. at 13-14.

A treating physician's opinion is entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists if: (1) the treating physician's opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion is conclusory or inconsistent with the doctor's own medical records. *Id*. Whenever a physician offers a statement reflecting judgment about the nature and severity of a claimant's impairments, the ALJ must state with particularity the weight given to that opinion and the reasons for same. *Winschel*, 631 F.3d at 1178-79.

As for the non-medical opinions offered by Ms. Costa, the regulations allow for the ALJ to rely on descriptions provided by non-medical sources about how certain

symptoms affect the claimant's activities of daily living and his or her ability to work. 20 C.F.R. § 404.1529(a); 20 C.F.R. § 404.1513(1)(4); Social Security Ruling 96-8p, 1996 WL 374184, at *5. But the ALJ does not owe any deference to lay opinions or need good cause to reject them. *See McMahon v. Comm'r, Soc. Sec. Admin.*, 583 F. App'x 886, 891-92 (11th Cir. 2014) ("Although McMahon contends the ALJ did not give proper weight to her mental health counselor's 1997 letters and nurses' progress notes….these documents do not constitute 'medical opinions' because they are not statements from physicians or psychologists that reflect judgment about the nature and severity of McMahon's impairments. Thus, the ALJ was not required to assign and explain the weight give to that evidence.") (citation omitted).

For the reasons described below, we disagree with Plaintiff as to the ALJ's treatment of the opinion evidence of record. The ALJ's decisions are supported by the substantial evidence and no legal error occurred in failing to give each opinion at issue controlling weight.

### 1. *Dr. Richard S. Bennett, D.O.*

On August 25, 2016, Dr. Bennett completed a "Children's Medical Questionnaire" that detailed his treatment history with Plaintiff and provided opinions on the severity of his condition. [R. at 832]. Dr. Bennett completed the form and indicated Plaintiff's suffered from "marked" limitations with regard to interacting and relating with others and maintaining his health and physical well-being. *Id.* at 835, 837. Bennett also found Plaintiff to suffer from "extreme" limitations in the domains of attending and completing tasks and caring for himself. *Id.* at 836-

37. Thus, if the ALJ chose to give Dr. Bennett's medical opinion controlling weight, Plaintiff's condition would have been found to have "functionally equaled" a listed impairment. *See* 20 C.F.R. § 416.926a(a) (combination of impairments "functionally equals" a listing if the impairment results in "marked" limitations in two domains of functioning or "extreme" limitations in one domain).

The ALJ chose to accord little weight to the opinion offered by Dr. Bennett. [R. at 23]. She gave her reasons for doing so:

> [T]he opinion is not consistent with the substantial evidence of record that document that with consistent treatment and compliance with treatment, the claimant's symptoms ameliorate. The doctor acknowledges that the claimant takes medication intermittently and receives therapy. However, the doctor did not indicate the impact of the intermittent compliance with medication had on the claimant's symptoms, [despite the fact that] the clinical notes document an increase in symptoms without medication. The doctor also did not acknowledge that the claimant had discontinued therapy, and what impact, if any, [this] had on the claimant's [functioning.] The doctor also opined extreme limitations in acquiring and using information, but the grade reports are to the contrary. The extreme limitations in Domains II and V are equally unsupported. The claimant obtained a "C" in conduct, which, according to the grade report, is satisfactory. The opinion of "marked" limitations in Domains III and VI is equally unsupported by the record.

*Id.*

There was no legal error in failing to give Dr. Bennett's opinion controlling weight. As the decision makes clear, the ALJ found the opinions to be inconsistent with the substantial evidence of record. *Id.* This is sufficient "good cause" to give something less than "controlling" weight to the medical source opinions, and the ALJ provided clear articulation his reasons for making such a determination. *See* 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's medical opinion on the

issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.") (emphasis added); *Winschel*, 631 F.3d at 1179 (ALJ must articulate reasons for not affording controlling weight to a treating physician's opinion).

Substantial evidence also supports the ALJ's decision. As described in the decision, Dr. Bennett's findings that Plaintiff suffered from "marked" or "extreme" limitations in several domains of functioning is inconsistent with medical records submitted with the disability request. Those records show that Plaintiff's condition often improved with medication. For example, on September 21, 2015, Plaintiff's mother called Dr. Bennett's office. Notes from that call indicate that D.M. was "very attentive and completed everything he needed to do" when he was given 20 milligrams of Vyvanse. [R. at 1014]. A few weeks later, when Plaintiff treated with Dr. Lina Reyes, there were "no complaints" and "no reports of aggressive behavior" from the mother when Plaintiff took his medications, and Reyes noted D.M.'s grades had improved "since he started taking medications for ADHD." [R. at 932-34].[5]

Plaintiff's report cards from the 2015-2016 academic year also support the ALJ's determination as to Dr. Bennett. There are certainly indications that Plaintiff struggled with certain subjects in kindergarten, as he received an "F" in science and

---

[5] Roughly three months later, Plaintiff's mother reported to Dr. Bennett on an office visit that Plaintiff's behavior had become worse, but the doctor made a notation that the child was not taking his medications. *Id*. at 1002.

art in the fourth quarter of the academic year. [R. at 430]. But his report card for the latter half of the school year also shows that he received exemplary grades in music and physical education in the third quarter, and "Bs" and "Cs" in language arts, math, Spanish, music and physical education during the fourth quarter. *Id*. Additionally, his effort level was described as "satisfactory," as was his conduct for the entire school year. *Id*. Thus, records from the academic year preceding Dr. Bennett's medical source opinion significantly undermine his determination that Plaintiff suffered from "extreme" or "marked" limitations in several functional domains at that time.

We must show deference to the ALJ's factual findings, and such findings are conclusive if they are supported by substantial evidence. *Chiappini v. Comm'r of Soc. Sec.*, 737 F. App'x 525, 527 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001)). Viewing the record as a whole, and in light of certain inconsistencies between other records and Dr. Bennett's opinion, the decision not to afford the doctor's medical source statement with controlling weight cannot serve as grounds for remand.

### 2.      *Dr. Gloria Diaz-Medina, M.D.*

Like Dr. Bennett, Dr. Diaz-Medina completed a "Children's Medical Questionnaire" pertaining to Plaintiff's alleged condition. [R. at 852-57]. The questionnaire asked for Dr. Diaz-Medina's opinions on Plaintiff's limitations as to the functional domains outlined by the regulations. *Id*. The doctor indicated that Plaintiff had "marked" limitations as to his ability to acquire and use information, attend and complete tasks, interact or relate with others, and care for his person. *Id*. at 855-56.

Dr. Diaz-Medina also found Plaintiff to have "marked" limitations as to the effect his condition had on his overall health and well-being. *Id*. at 857. If given controlling weight, such "marked" limitation would require the ALJ to find the Plaintiff's condition "functionally equals" a listed impairment. *See* 20 C.F.R. § 416.926a(a).

The ALJ chose to give the opinion little weight, finding it was inconsistent with the other medical evidence of record. [R. at 23-24]. Such inconsistencies suffice to show "good cause" for an ALJ to provide a treating physician's medical opinion with something less than controlling weight. *See Martinez v. Acting Comm'r of Soc. Sec.*, 660 F. App'x 787, 794 (11th Cir. 2016) (ALJ gave sufficient reasons for assigning little weight to opinions of physician because it was inconsistent with overall record); *Hernandez v. Comm'r of Soc. Sec.*, 523 F. App'x 655, 657 (11th Cir. 2013) (ALJ provided good cause for affording little weight to opinions of social security disability claimant's treating physicians, which were inconsistent with doctors' own treatment notes and with objective medical evidence).

Once again, substantial evidence supports the ALJ's decision. The ALJ correctly points out that Dr. Diaz-Medina indicated "marked" and "extreme" limitations in Plaintiff's ability to look after his own health and well-being and interact or relate with others; yet the medical questionnaire she filled out indicated that she had not placed any limitation's on Plaintiff's activities. Likewise, although the "marked" limitations allegedly extended to Plaintiff's ability to attend to and complete tasks, his report cards show he was able to obtain "A's" and "B's" in classes such as music, physical education, art, and social studies during the first quarter of

the 2016-2017 school year. [R. at 431]. His effort was described as "outstanding" in two of his classes and "satisfactory" in the remaining six, and he received "excellent" or "good" conduct grades in all courses that quarter. *Id*. If Plaintiff was suffering the drastic limitations Dr. Diaz-Medina claims he was at that time, one would it expect those limitations to be reflected in his report card. As the record makes clear, they are not.

For this reason, the ALJ had good cause to discount the opinions contained in Dr. Diaz-Medina's health questionnaire. Since that decision is supported by the substantial evidence, we will not remand on this basis.

### 3.    *Christy Costa, Plaintiff's Teacher*

The ALJ also had good cause to give little weight to the letter submitted by Christy Costa. [R. at 32]. Substantial evidence supports the decision to ignore the observations made by Plaintiff's teacher, as once again the claims included in the letter were undermined by the fact that Plaintiff was able to achieve good grades in certain classes and showed "good" conduct in the 2015, 2016 and 2017 academic years. *Id*. at 430-31. Likewise, the letter contains several inconsistent statements that further belie the statements made by Ms. Costa. For example, although she wrote that Plaintiff continuously struggled with classwork and his level of maturity fell below the first-grade level, she also wrote that his conditions improved when certain medications were administered and that his "conversation is very advanced." *Id*. at 432. The fact that he received "As," "Bs" and "Cs" in certain classes during this time also undermine her claim that he was entirely incapable of producing satisfactory

work in his classes.

Stated simply, the claims made by Ms. Costa are not entitled to controlling weight and are inconsistent with the evidence of record. For this reason, the ALJ was right to ignore those claims, and did not commit reversible error in doing so. *See Quinn v. Berryhill*, 2019 WL 851420, at *7 (M.D. Fla. Feb. 22, 2019) ("The Court finds no error in the ALJ's analysis of Plaintiff's wife's opinion. The ALJ summarized the testimony of Plaintiff's wife and determined it was entitled to little weight because her statements, like Plaintiff's, were not consistent with the overall evidence of record.").

### E.    *Substantial Evidence Supports the Listed Impairment Finding*

At the third step of the analysis, the ALJ concluded that D.M. did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." [R. at 19]. The ALJ continued:

> In reaching this conclusion, the undersigned has considered all of the impairments under 404 Subpart P, Appendix 1, including the listing for mental disorders contained in 112.00 (including 112.02, 112.10, and 112.11) and the listing for asthma contained in 103.00 (including 103.03).

*Id*. Plaintiff contends that the ALJ failed to provide explanation as to "how she determined that [D.M.] does not meet or medically equal the criteria of any listed impairment," and ignored medical records that indicated his condition fell within the purview of one of those listings. [D.E. 22, p. 7].

Plaintiff's contention on this issue centers largely on her argument that the

ALJ failed to consider medical opinions submitted by Dr. Diaz-Medina. [D.E. 22, pp. 7-11]. But as we discussed earlier in this Order, the ALJ provided "good cause" for giving those opinions little weight, and the substantial evidence supported that decision.

Perez's remaining challenge involves her claim that "the ALJ provided absolutely no explanation whatsoever as to how she determined" that D.M.'s condition did not fall within a listed impairment. But in the Eleventh Circuit, an ALJ's finding that a claimant's impairments do not meet or equal a listing "may be implied from the ALJ's decision." *James v. Comm'r, Soc. Sec. Admin.*, 657 F. App'x 835, 838 (11th Cir. 2016); *Hutchinson v. Bowen*, 787 F.3d 1461, 1463 (11th Cir. 1986) ("We thus consider it clear that the ALJ, in reaching the fourth and fifth steps of the disability analysis, implicitly found that appellant did not meet any of the Appendix 1 impairments."). Contrary to Plaintiff's argument, the law does not require the ALJ to provide a thorough explanation as to why or how she determined that D.M. did not medically equal the Listings when it is made implicit in her subsequent analysis at Steps Four and Five. *See Hutchinson*, 787 F.3d at 1463 ("While Appendix 1 must be considered in making a disability determination, it is not required that the Secretary mechanically recite the evidence leading to her determination.").

In light of the extent to which the ALJ discussed the medical reports found in the record and how those records impacted her analysis, we find that the substantial evidence supports the ALJ's finding that D.M. did not have deficits necessary to meet the listed impairments' requirements. Any alleged failure to explicitly discuss the

reasons why or how she reached her conclusion at Step Three cannot be grounds for remand. *See Rodriguez v. Comm'r of Soc. Sec.*, 633 F. App'x 770, 774 (11th Cir. 2015) (finding that ALJ implicitly concluded that claimant did not have deficits in adaptive functioning where the substantial evidence showed that claimant attended mainstream high-school classes through the eleventh grade without any specialized educational assistance, assisted his wife with household chores such as cooking and laundry, did the grocery shopping for his household, and attended church twice a week); *Tuberville ex rel. Rowell v. Astrue*, 316 F. App'x 891, 893 (11th Cir. 2009) ("We conclude that – though the ALJ did not explicitly discuss why Rowell did not actually meet Listing 112.05 – substantial record evidence supports that Rowell's condition did not actually or functionally meet Listing 112.05 and, therefore, supports the ALJ's ultimate conclusion that Rowell was not disabled.").

## IV.  CONCLUSION

For the foregoing reasons, we hereby **ORDER** that Plaintiff's Motion for Summary Judgment be **DENIED**, the Commissioner's Motion for Summary Judgment be **GRANTED**, and the Administrative Law Judge's decision be **AFFIRMED.** Judgment is now entered in favor of the Commissioner, and the action is **CLOSED**.

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 28th day of March, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge