## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20760-CIV-TORRES

YODALIS IRIANNE PEREZ,

     *Plaintiff,*

vs.

KILOLO KIJAKAZI,
COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

     *Defendant.*

_____/

## <u>ORDER ON MOTION FOR ATTORNEY'S FEES</u>

This matter is before the Court on Yodalis Irianne Perez's ("Plaintiff") Motion for Attorney's Fees under the Equal Access to Justice Act ("EAJA"). [D.E. 38]. Defendant Commissioner filed a response in objection to the motion for fees [D.E. 40] to which Plaintiff replied. [D.E. 41]. The Commissioner filed a notice of supplemental authority on August 9, 2021 to which Plaintiff responded the next day. [D.E. 43, 44]. Plaintiff has filed her own notices of supplemental authority [D.E. 45-50, 57-59], some of which the Commissioner responded to in opposition. Upon review of Plaintiff's motion, the response, the reply, the notices of supplemental authority and the responses to it, and the complete record, the motion for fees is **GRANTED.**

## I.    BACKGROUND

On March 8, 2017, a Social Security Administration ("SSA") Administrative Law Judge ("ALJ") issued a decision that Plaintiff's minor child was not disabled. [D.E. 40 (citations omitted)].   Plaintiff then filed her complaint [D.E. 1] seeking review of the unfavorable decision, and the Court entered final judgment in favor of the Commissioner on March 28, 2019 [D.E. 29].  After Plaintiff appealed, the Eleventh Circuit, following the Supreme Court's decision in *Carr v. Saul*, 141 S. Ct. 1352 (2021), issued an order remanding the case because the ALJ was not properly appointed pursuant to the Appointments Clause of the United States Constitution. [D.E. 37].  Significantly in this case, that argument had not been raised before the ALJ or the Appeals Council.

Prior to our order in favor of the Commissioner, the Supreme Court held in *Lucia v. SEC*, 138 S. Ct. 2044 (2018) that ALJs of the Securities and Exchange Commission ("SEC") were improperly appointed under the Appointments Clause— but did not address the constitutional status of SSA ALJs.  *See* 138 S. Ct. 2044, 2055. Weeks later, on July 10, 2018, then-President Donald Trump issued Executive Order 13,843, reclassifying SSA ALJs as members of the excepted service in light of *Lucia*. *See* Excepting Administrative Law Judges from the Competitive Service, 83 Fed. Reg. 32,755 (July 10, 2018).

Plaintiff argued that the ALJ was not properly appointed under *Lucia* in her motion for summary judgment, but we found that she waived that argument because she did not raise the issue at the administrative level.  At the time, the Eighth and

Tenth Circuits had adopted the Commissioner's position that an Appointments Clause claim is forfeited if not challenged in the administrative proceedings just like many District court decisions in this Circuit had done. And the Eleventh Circuit had not yet weighed in on the issue. *See Leon v. Comm'r of Soc. Sec.*, 2021 WL 3732914, at *3 (M.D. Fla. Aug. 24, 2021); *see also Torres v. Comm'r of Soc. Sec.*, 2021 WL 3562610, at *3 (D.P.R. Aug. 11, 2021) (noting that District courts in the First Circuit took the same position as the Commissioner even though the First Circuit had yet to weigh in); *Dewonkiee L. B. v. Comm'r of Soc. Sec.*, 2021 WL 3417842, at *3 (N.D.N.Y. Aug. 5, 2021) (same with the Second Circuit). The Third, Fourth, and Sixth Circuits held the opposite view. On April 22, 2021, the Supreme Court resolved the conflict and held a claimant does not forfeit an Appointments Clause challenge in a Social Security proceeding by failing to raise it before the agency in a 9-0 decision. *See Carr*, 141 S. Ct. at 1362.

There is no dispute that Plaintiff is the prevailing party in this case nor that the amount of fees Plaintiff seeks is reasonable. The issue here is whether the Commissioner was substantially justified in her position even though the Supreme Court ultimately disagreed.

## II.    APPLICABLE LAW

The EAJA does not expose the Commissioner to liability for attorney's fees and expenses if her position was "substantially justified," 28 U.S.C. § 2412(d)(1)(A), which means "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). "In proving that its position was substantially

justified, the [G]overnment bears the burden of demonstrating that its case had a reasonable basis both in law and fact." *Jefferson v. Bowen*, 837 F.2d 461, 462 (11th Cir. 1988) (alteration added; quotation marks and citations omitted).  In other words, the Government's position is substantially justified if it is "justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565.  A position need not be correct to be substantially justified.  *See id.* at 569 ("Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose.").  Additionally, "[t]he fact that the [G]overnment lost its case does not raise a presumption that the government's position was not substantially justified. Nor is the [G]overnment required to establish that its decision to litigate was based on a substantial probability of prevailing." *White v. United States*, 740 F.2d 836, 839 (11th Cir. 1984) (alterations added; citations omitted).

In determining whether the Government acted reasonably, a court must consider both the Government's prelitigation and litigation positions, "treating a case as an inclusive whole[.]" *Comm'r, INS v. Jean*, 496 U.S. 154, 159-62 (1990) (alteration added; citations omitted); *see also* 28 U.S.C. § 2412(d)(2)(D) (defining the "position of the United States" as both "the position taken by the United States in the civil action" and "the action or failure to act by the agency upon which the civil action is based").  A non-exhaustive list of guideposts for assessing the Government's reasonableness includes:

> (1) the state at which the litigation was resolved; (2) views expressed by other courts on the merits; . . . (3) the legal

> merits of the government's position . . . [(4)] the clarity of
> the governing law; [(5)] the foreseeable length and
> complexity of the litigation; and [(6)] the consistency of the
> government's position.

*Jean v. Nelson*, 863 F.2d 759, 767 (11th Cir. 1988) (alterations added; citations omitted). One court's agreement or disagreement with the Government is not dispositive; but a "string of losses" or "even more so[,] a string of successes" strongly indicates substantial justification (or a lack thereof). *Pierce*, 487 U.S. at 569 (alteration added).

## III.   ANALYSIS

The Commissioner argues her position was substantially justified at the pre-litigation stage (i.e. at the administrative level) because Plaintiff never raised the Appointments Clause issue and it was a long-standing and well-accepted principle that a litigant who does not timely raise an argument before an administrative agency forfeits that argument. S*ee, e.g., Elgin v. Dep't of Treasury*, 567 U.S. 1, 23 (2012); *see also Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938) (citing the "long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted"); *United States v. Suescun*, 237 F.3d 1284, 1287-88 (11th Cir. 2001) (criminal defendant forfeited Appointments Clause challenge to appointment of interim United States Attorney by failing to raise it in timely fashion); *see also Hill v. SEC*, 825 F.3d 1236, 1252 (11th Cir. 2016) (dismissing Appointments Clause challenge where plaintiff failed to raise it before the agency).

The Commissioner's litigation position was the same as its pre-litigation position:  Plaintiff forfeited her objection to the Appointments Clause argument because it was not raised at the administrative level.  The Commissioner argues this position was reasonable because *Carr* was yet to be decided and a majority of Federal courts had agreed with that position, including two Courts of Appeals.

In reply, Plaintiff's initial argument is that the Commissioner has waived any defense and thus she is due fees by default.  To make this argument, Plaintiff contends that the Commissioner's argument regarding "substantial justification" is beside the point because the Commissioner's defense should have been one based on "special circumstances."  And because these are independent defenses and the Commissioner explicitly stated that it is only making a "substantial justification" argument, Plaintiff posits that the Commissioner has waived the special circumstance defense, the only defense that could apply under these circumstances.  Plaintiff then alternatively argues that the Commissioner has also failed to make a convincing substantial justification defense based on the manner in which the Commissioner addressed the forfeiture argument.  Hence, under either basis, Plaintiff is entitled to attorneys' fees as prevailing party under the statute.

To address this dispute, we first determine whether the Commissioner's response is properly based on the defense of "substantial justification" or, instead, should have been presented as a "special circumstance" defense that has now been waived.

### A.   _Nature of the Commissioner's Defense to Fees_

Though we must begin with the text of the statute, the answer to the question posed by Plaintiff is not readily resolved by that initial analysis: "Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses,  . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).  The statute itself does not dictate how these exceptions to the statutory command of "shall" should be applied.

But the legislative history of the original enactment of the EAJA in 1980 reveals that "special circumstances" was designed to be an additional consideration for an award of fees even if the government's position was not substantially justified. According to the original House Report on the bill:

> Furthermore, the Government should not be held liable where special circumstances would make an award unjust. This "safety valve" helps to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts. _It also gives the court discretion to deny awards where equitable considerations dictate an award should not be made._

H.R.Rep. No. 1418, 96th Cong., 2d Sess. at 11, _reprinted in_ 1980 U.S. Code Cong. & Ad.News, 4953, 4984, 4990 (emphasis added).

The Supreme Court has not directly applied or construed this provision in a case awarding or denying EAJA fees.  It has recognized, in dicta, that the statute was

written to include this "built-in check" against an award of fees, even if the government's position was not substantially justified, where it would be "unfair" to award fees in a given case. *See Scarborough v. Principi*, 541 U.S. 401, 423 (2004) (holding that strict pleading and jurisdictional requirements did not apply to EAJA fee application to deny award of fees where application was amended to include claim that legal position was not substantially justified).

Applying this legislative history, early courts tasked with enforcement of the EAJA concluded that the statutory language "directs a court to apply traditional equitable principles in ruling upon an application for counsel fees by a prevailing party." *Oguachuba v. I.N.S.*, 706 F.2d 93, 98 (2d Cir. 1983). So, for instance, if a litigant is shown to have exercised unclean hands before and during litigation with the government, equitable considerations may militate against an award of fees under the "special circumstances" provision of the statute even where the government's position was also not reasonable. "The statutory purpose of determining unreasonable behavior by the government, for example, does not dictate an automatic award of counsel fees to a persistent litigant who happens to prevail as to one claim among many others which are meritless. The application of equitable principles in the instant case clearly calls for a denial of counsel fees." *Id.* at 99.

In line with this early analysis of the statute, and consistent with the limited Supreme Court analysis available on the topic, the few cases where "special circumstances" were at issue in a fee dispute under the EAJA have focused on particular conduct or misfeasance on the part of the prevailing litigant, as opposed to

the wisdom or reasonableness of the government's position that is better analyzed under the "substantial justification" prong of the statute.   *See, e.g., Brinker v. Guiffrida*, 798 F.2d 661, 668 (3d Cir. 1986) (affirming award of fees under EAJA and rejecting special circumstances defense where "our decision that the government's position was unjustified is grounded in FEMA's inexcusable delay in advancing a supportable factual position. Therefore, a 'safety valve' directed at protecting the good faith advancement of novel legal theories has no relevance here."); *Taylor v. United States*, 815 F.2d 249, 253 (3d Cir. 1987) (affirming denial of fees under EAJA where plaintiff's bad faith conduct, including fleeing jurisdiction to avoid criminal sentence and taking affirmative steps to benefit from government's challenged conduct, evidenced special circumstances that made an award of fees unjust, even assuming government's legal position was not substantially justified); *Sakhawati v. Lynch*, 839 F.3d 476, 479 (6th Cir. 2016) (affirming award of fees where special circumstances like unclean hands on the part of the litigant not established; "The government might well be correct that Sakhawati is a 'bad person' litigant in the colloquial sense of the term, but her alleged misconduct did not affirmatively seek to take advantage of the government's action challenged in her appeal"); *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 304 (2d Cir. 2011) (reversing denial of EAJA fees where special circumstances had not been shown; "A prevailing party can therefore be denied attorney's fees under the EAJA for 'special circumstances' when *his own misconduct* created the circumstances that led to the litigation, . . . and when *that party's* contributions to the litigation's success were 'marginal, duplicative and unnecessary,'

. . .") (emphasis added); *Priestley v. Astrue*, 651 F.3d 410, 418 (4th Cir. 2011) (reversing denial of EAJA fees premised on counsel's non-compliance with Local Rules for special attorney admissions; "the doctrine of 'unclean hands' is not supportable, and the nature of [counsel's] cannot be a special circumstance making the EAJA award for their work unjust in these cases.").

Considering this lengthy track record of cases treating the special circumstances prong as an equitable consideration based on the litigant's alleged misconduct, we readily agree with Plaintiff that the Government here has waived any special circumstance argument. The Government has not challenged any action or inaction on the part of the Plaintiff as an equitable defense to an award of statutory fees. Nor has the Government tried to excuse payment of fees based on malfeasance on the part of Plaintiff's counsel. Instead, the Government has focused on a defense of its own decisionmaking in the case and its reliance on cases that supported the government's legal position.

So, by its very nature, the Government is properly and directly putting at issue the substantial justification prong of the fee statute that turns on what the Government did or did not do in response to Plaintiff's claims. The Government is thus trying to meet its burden of demonstrating that its position was "substantially justified" by "demonstrating that its case had a reasonable basis both in law and fact." *Jefferson* 837 F.2d at 462. The case law and arguments made by the Commissioner are wholly rooted in showing its Appointments Clause forfeiture position had a reasonable basis in law and fact. That is plainly the issue that the substantial

justification prong of section 2142(d)(1)(A) was designed to address. And as a result, Plaintiff's theory that the Government has defaulted on the only viable challenge to the fee award is simply not persuasive.

As the Commissioner properly preserved its statutory defense of substantial justification, we turn to the merits of that thorny issue.

### B.    *The Substantial Justification Defense*

Plaintiff argues that her ultimate position has won the day so fees should be awarded.  Plaintiff does so with the backdrop of the Supreme Court agreeing with her original position in a 9-0 opinion.  Therefore, her arguments are even more bolstered than before.  There is no doubt that the Commissioner's position was ultimately determined to be wrong by the Supreme Court.  But our analysis does not necessarily hinge on who's position was ultimately right.  *See Pierce*, 487 U.S. at 569.  It is whether reasonable minds would have taken the position of the Commissioner in denying benefits or opposing remand in light of the split in the Federal courts that pre-dated the *Carr* decision.

On paper, a very strong position can be made that the Commissioner's pre-litigation was substantially justified considering the SSA's position in 2018 and 2019, and the uncertainty of the legal issues.  Admittedly, it is hard to find that the ALJ acted unreasonably by not *sua sponte* raising that her appointment was not constitutional when she was "powerless to grant the relief requested."  *Carr*, 141 S. Ct. at 1361.  "After all, there were no Commissioner-appointed ALJs to whom

objecting claimants' cases could be transferred, and the ALJs could not very well have reappointed themselves." *Id.*

In this litigation, the briefing and the issuance of the final order denying Plaintiff's claim all pre-date *Carr*. And there was thus no binding decision in the Eleventh Circuit on the issue. Hence, the Commissioner was relying on a substantial amount of ultimately incorrect authority to support what was at the time a viable legal theory. This is highlighted by the Eighth Circuit, Tenth Circuit, and numerous District courts in this Circuit agreeing with the Commissioner previously, including this Court. This "string of victories" undoubtedly supports a finding of substantial justification. *See Valle-Roman v. Comm'r of Soc. Sec.*, 2019 WL 1281171, at *2 (M.D. Fla. Mar. 20, 2019) (ruling in favor of the Commissioner regardless of *Lucia*); *Jones v. Berryhill*, 2019 WL 2583157, at *7 (N.D. Fla. June 21, 2019) (same); *Parker v. Berryhill*, 2019 WL 3097511, at *10 (S.D. Fla. July 15, 2019) (string citing cases within the Circuit); *Capell v. Saul*, 2020 WL 5868165, at *4 (M.D. Fla. Sept. 9, 2020), *report and recommendation adopted*, 2020 WL 5848337 (M.D. Fla. Oct. 1, 2020) (same).

Looking at the record from this perspective, we agree that it is difficult to find that the SSA acted unreasonably in this case. We could stand on firm footing in ruling that the Commissioner had substantial justification for her legal position, which is in-line with many decisions from across the country, including from our own Chief Judge. *See Benjamin v. Comm'r of Soc. Sec.,* No. 19-CV-23691-Altonaga (S.D. Fla. Aug. 2, 2021) (ECF No. 45 at 6) (noting "the dearth of precedent governing the

[Government's] obligation to sua sponte raise the Appointments Clause issue" and finding that the Commissioner's pre-litigation position had a reasonable basis both in law and fact"), *followed by Gagliardi v. Comm'r of Soc. Sec. Admin.,* No. 18-CV-62106, 2022 WL 4287579, at *3 (S.D. Fla. Mar. 1, 2022), *Report and Recommendation adopted,* No. 18-CV-62106, 2022 WL 3572445 (S.D. Fla. Aug. 19, 2022) (denying award of EAJA fees where Commissioner's position to deem Appointment Clause challenges forfeited was substantially justified); *see also Leone v. Comm'r of Soc. Sec.*, 2021 WL 3732914, at *3 (M.D. Fla. Aug. 24, 2021) (denying fees and finding that the Commissioner's position was substantially justified under the same circumstances); *Torres*, 2021 WL 3562610, at *3 (D.P.R. Aug. 11, 2021) (same); *McCary-Banister v. Saul*, 2021 WL 3494606, at *3 (W.D. Tex. Aug. 9, 2021) (same); *Benjamin v. Comm'r of SSA*, Case No. 19-23691 (S.D. Fla. Aug. 2, 2021) (same); *see also Flynn v. Saul*, 2021 WL 2577146, at *5 (E.D. Pa. June 22, 2021) (denying fees even though the District court was overturned by the Third Circuit prior to the decision in *Carr*); *Rager v. Saul*, 2021 WL 374477, at *2 (W.D. Ky. Feb. 3, 2021) (same in the Sixth Circuit).

Having said that though, we are not as confident of this stance as most of the other cases that have tackled this issue. Plaintiff persuasively argues that the Commissioner's legal position was in fact contrary to the agency's own established principles, which it acknowledged late in the *Carr* litigation: that there was not supposed to be an exhaustion requirement governing SSA proceedings. If so, that

provides strong support for the argument that, at least at the pre-litigation phase of the case, the agency's position was knowingly arbitrary.

After all, the Commissioner's entire litigation position made much of the fact that social security claimants forfeited this constitutional challenge because they did not timely raise the issue before the ALJ, which presumably means that had they done so the ALJ could have considered the matter and done something about it.  It turns out, however, that the Commissioner quietly and purposely forbade its ALJs from granting any relief on this issue had it been raised.

That certainly casts the Commissioner's position in a hypocritical light, because the purportedly "justified" legal position was an utter fallacy.  And that is made even more clear by acknowledging that the SSA regulations firmly represent to claimants that "[i]n making a determination or decision in your case, we conduct the administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900.  It is precisely this informal and non-adversarial process that counseled against the Supreme Court imposing a firm exhaustion requirement for Social Security cases.  "[W]e hold that a judicially created issue-exhaustion requirement is inappropriate.  Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." *Sims v. Apfel*, 530 U.S. 103, 112 (2000).

Even worse, while the Commissioner was pressing its forfeiture theory in this litigation, she did so while fully aware that *Sims* undercut the jurisprudential legs for that position. And it was not until the Commissioner was pointedly challenged on

this score before the Third Circuit Court of Appeals that agency counsel was forced, at oral argument, to concede that "there is no statutory or regulatory exhaustion requirement that governs SSA proceedings." *Cirko v. Comm'r of SSA,* 948 F.3d 148, 153 (3d Cir. 2020).  In this case, however, that acknowledgment was never made. Instead, the Commissioner maintained that "the plain language of SSA's regulations" created an issue exhaustion/ forfeiture rule that requires "a claimant to raise all issues - including constitutional issues - to the agency at the earliest possible juncture." [D.E. 25 at 17].

So, what do we make of all this? On the one hand, an opinion that follows the overwhelming view that fees are not warranted in this *Carr*-affected litigation could easily be issued (given that it has been drafted for some time).  In the intervening period while the Court has mulled over this case, even more cases have been docketed where fees were denied because the Commissioner was deemed substantially justified. See, e.g., *Garth D. v. Comm'r of Soc. Sec.*, No. 6:18-CV-01326 EAW, 2022 WL 2589787, at *4 (W.D.N.Y. July 8, 2022) ("Considering the matter as a whole, the Court finds that the government's position was substantially justified. Plaintiff did not raise the Appointments Clause issue before the administrative agency, and in opposing Plaintiff's motion for judgment on the pleadings, the Commissioner relied on the principal that generally, an argument not timely raised before the administrative agency is waived."); *Swisher v. Kijakazi*, No. 3:18-CV-01356, 2022 WL 2813044, at *5 (M.D. Tenn. July 18, 2022), *Report and Recommendation adopted,* No. 3:18-CV-01356, 2022 WL 3365061 (M.D. Tenn. Aug. 15, 2022) ("Given the timing of

Defendant's litigation position and other objective indicators of reasonableness, Defendant was substantially justified is pursuing an issue-exhaustion requirement because this was an unsettled part of the law."); *Latoya A. on behalf of N.C. v. Kijakazi*, No. 5:19-CV-581 (DJS), 2022 WL 969650, at *2 (N.D.N.Y. Mar. 31, 2022) (denying fees as "accepting Plaintiff's position would essentially require this Court to find that the opinions of the Eighth and Tenth Circuits, with which the Supreme Court ultimately disagreed, were unreasonable. The Court declines to do."); *Snaith v. Comm'r of Soc. Sec.*, No. 4:19-CV-01830-JHE, 2021 WL 9629338, at *3 (N.D. Ala. Sept. 9, 2021) ("Throughout litigation, based on the state of the law at the time (and even currently), the Commissioner's position has been reasonable and substantially justified."); *Diane P. v. Kijakazi*, No. 4:17CV143, 2022 WL 135915, at *4 (E.D. Va. Jan. 10, 2022) ("When agency proceedings took place here, no settled law required that the Government raise an Appointments Clause issue <u>sua</u> <u>sponte</u> during agency proceedings.").

On the other hand, we take note of the analysis of these cases and point out that, in some respects, they are perpetuating principles of law that are not entirely correct. The "general principle" of exhaustion before an administrative agency is a valid one, but given the decision in *Sims* that was the foundation for *Carr,* it is safe to say this is an overstatement in a Social Security case. The Commissioner has now acknowledged what *Sims* foreshadowed: that a claimant cannot be found to have fully exhausted an argument available in the record when she is making an informal and non-adversarial petition with the agency. So why are we making judgments in

these very same cases to deny fees on that same basis?  At a macro level, we seem to be perpetuating the problem that led up to *Carr*.  We are taking the Commissioner's illusory positions at face value and running with them, but maybe we need to be a bit more skeptical and careful doing that given our track record in this entire litigation. In other words, merely following the trend of cases supporting the Commissioner's post-*Carr* legal positions in this litigation to move on with life seems to be ill-advised.

Yet, we note as well that we have no quarrel with any Court or Judge that has found for the Commissioner on this issue because, admittedly, a fee decision under the EAJA is a highly fact-laden and discretionary one.  Two reasonable people can look at the same record and reach different conclusions.  That is, after all, why fee awards are clothed with an abuse of discretion standard as the law makes room for the possibility that not everyone will see a given record the same way.  So, all these cases awarding fees are not wrong, in our view.  They are all persuasive support for the denial of fees here.

But persuasive support notwithstanding, we cannot cast aside the lasting concern we have in *this* case and based on *this* record.  Had the Commissioner made clear at the inception of the case, with respect to the forfeiture theory before the ALJ and Appeals Council, that she advised the ALJ that she could not ever rule in the claimant's favor on this score, would that have given the Court pause?  Would we have given *Sims* more conclusive weight than we did and concluded that a forfeiture and exhaustion stance was not well-suited for a Social Security case, whether before the Appeals Council *or* the ALJ?  And, indeed, could we have then concluded, like the

dissenting judge from the Tenth Circuit, that it was time to buck the trend of decisions favoring the Commissioner's fallacy-laden theory? In hindsight, we think the answer is yes.

So does the Commissioner.  In many cases that have arisen on this issue, the Commissioner and counsel have agreed to not oppose an award of fees stemming from the *Carr* decision, at least where they were pending before a Circuit Court.  [D.E. 58]. Claimant filed notice of supplemental authority a digest of cases where the Commissioner did not oppose an EAJA award of fees following *Carr*.  That has also occurred in a few cases that appear to have been pending only at the district court level. [D.E. 47].  In response, the Commissioner acknowledged that she has not opposed fees in a few such cases in the Third Circuit, but that concession does not estop a government agency from standing firm on its overall position in other cases. The key distinction, says the Commissioner, is that here the Commissioner's decision was initially affirmed on the merits by this Court and remanded while on appeal to the Eleventh Circuit.  That procedural posture renders the isolated examples cited by Claimant irrelevant.  And even if they had some relevance, the Court should not grant much weight to these cases because they only reflected the Commissioner dutifully reviewing the particular circumstances of that case and concluding that fees were appropriate.

We fully share the Commissioner's point that different cases may require different approaches and outcomes.  Indeed, it is well established that fee motions in these cases must be analyzed at a granular level.  General rules or presumptions are

not appropriate.  *See, e.g., Pierce,* 487 U.S. at 562 ("We think that the question whether the Government's litigating position has been 'substantially justified' is precisely such a multifarious and novel question, little susceptible, for the time being at least, of useful generalization, and likely to profit from the experience that an abuse-of-discretion rule will permit to develop. . . . '[B]ecause the number of possible situations is large, we are reluctant either to fix or sanction narrow guidelines for the district courts to follow.'") (quoting *Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 10–11 (1980)).

Hence the Commissioner is undoubtedly correct when she argues that the Court is not bound to follow these other examples because the Commissioner has focused only the particular record in this case.  By that same measure, we reach the conclusion that the Government's correct approach is warranted, but that fact-specific analysis produces a different outcome than the Commissioner proposes.  We conclude that this case *does* warrant an assessment of fees, given the way the Commissioner litigated the issue at least at the inception of the case.[1]

The standard we are governed by requires us to make one overall fee determination.  We cannot award fees only for one part of the litigation as opposed to another.   We are bound to consider the case as a whole and reach an overall conclusion. *Pierce* does not reduce the "substantially justified" standard to a matter

_____

[1] Any fair reading of this Order reveals that the quarrel here is not with litigation counsel, but instead with the strategic judgments of the Commissioner and her agency subordinates.  But to make it even more crystal clear, we emphasize that counsel in the litigation handled it as professionally as always.  In other words, it is the client, not the lawyer, that gives rise to our problem.

of comparing the number of successful claims to unsuccessful claims in a single appeal. Rather, the question is whether the government's litigating position *in opposing remand* is "justified to a degree that could satisfy a reasonable person" and whether it was supported by law and fact. *Pierce,* 487 U.S. at 565; *see also Comm'r, INS v. Jean,* 496 U.S. at 161–62 (the government's posture on the case must be considered as an inclusive whole).

Here, that encompassing review compels us to find that fees are warranted. The Commissioner was not substantially justified in this particular case because the forfeiture theory it espoused was so littered with holes, many of which the Court did not fully appreciate, to such an extent that it is unfair to hold the claimant responsible for her own fees.  Justification is lacking precisely because the strategic decision to preclude any relief before the agency level, even if raised, and to oppose remand as soon as the litigation in this arose, was not reasonable.  Had the Commissioner chosen to promptly reevaluate its original bureaucratic position, then the cases could have been adjudicated without any finding of substantial justification.   But the Commissioner opposed remand in this case in reliance on an exhaustion theory totally undermined by *Sims*, and without revealing the total futility of that theory given well established law that it did not really tackle in this case.

For instance, we were not aware of some of the process undertaken by the Commissioner when the issue first arose.  We learn from the Supreme Court opinion in *Carr*, however, that on January 30, 2018, soon after certiorari was granted in *Lucia*, the agency issued an "emergency message" to ALJs advising them that

"adjudicators may see challenges ... related to the constitutionality of the appointment of SSA's ALJs." SSA, EM–18003: Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process, at 2. The agency warned ALJs that, because the "SSA lacks the authority to finally decide constitutional issues such as these," they should "not discuss or make any findings related to the Appointments Clause issue on the record." *Id*. Instead, ALJs were expressly directed to acknowledge any Appointments Clause objections with standardized language explaining that they " 'd[id] not have the authority to rule on that challenge.' " *Id*. The SSA reiterated these instructions in a second emergency message issued shortly after *Lucia* was decided. See SSA, EM–18003 REV: Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process—UPDATE, at 1–2 (June 25, 2018). It was not until March 2019 that the Acting Commissioner finally instructed the Appeals Council on how to handle preratification Appointments Clause challenges.

All these material facts were not known by or presented to the Court in addressing the forfeiture theory presented. To the contrary, the Commissioner's motion for summary judgment made much of the fact that the agency's regulations required all issues to be raised with the ALJ, in part so that the matter could be referred to an "expedited appeals process in certain cases where constitutional issues are raised. See 20 C.F.R. §§ 404.924, 416.1424." [D.E. 25 at 18]. We now know that this was all smoke and mirrors. ALJs were instructed to not do anything with these

challenges in the first place so what exactly was the "expedited appeals process" supposed to do with that?  As the Supreme Court addressed in *Carr,* not much.  And the agency knew it.  That hardly amounts to a good faith exhaustion requirement.

Indeed, the Court's opinion in *Carr* relied on this precise record to conclude that "as a practical matter, the agency's emergency messages belie the Commissioner's suggestion that the SSA would have changed course if only it had been " 'put on notice of the accumulating risk of wholesale reversals.' " *Carr,* 141 S. Ct. at 1362 n.7.  That underscores the fallacy of the entire enterprise, which we failed to appreciate at the time we ruled on this issue, though we clearly were not as informed on the agency's machinations as the Supreme Court was by 2021.

And on that same note, the Commissioner's justification for opposing remand would then have been a very hard sell given the state of the law addressing the futility of agency action belying an agency exhaustion requirement (which law the Court in *Carr* also relied upon to reject the Commissioner's position).  *See, e.g., McCarthy v. Madigan*, 503 U.S. 140, 148 (1992) ("an administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it."); *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 404 (1988) (exhaustion requirement could not apply where agency not equipped to grant any relief, rendering exhausation futile), *cited in Carr,* 141 S. Ct. at 1361.  We never reached this line of cases because we did not realize the whole enterprise was futile in the first place.

In sum, tasked as we are to evaluate the Commissioner's position as a whole, we now readily conclude that the motion should be Granted.  By necessity, federal judges rely a great deal on the candor and comprehensiveness of the Commissioner's actions in disability litigation.  When a particular case demonstrates arbitrary and untethered agency action, the argument for substantial justification is particularly unconvincing.  No doubt, this is a hard call given the number of cases that have gone the other way.  But in the exercise of our discretion, we choose to depart from that path given our review of our case and the Commissioner's failure to meet her burden of persuasion on this issue.

As the Claimant has now been found to be disabled on remand of the application, a new fee petition on that score may be accompanied with fees generated at this earlier stage of the case.  As the Commissioner did not directly challenge the reasonableness of the fees included in this motion based on its justification defense, the Court grants it an opportunity to do that, if warranted, when the amended fee petition is filed.  The amended petition should also take into account the Commissioner's concerns in its response to the Court's Order as to the appropriate source of funds that will be required for the reimbursement of fees. [D.E. 63].

### IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's motion for fees is **GRANTED**.  [D.E. 38].  An amended fee petition shall be filed as per Local Rule 7.3.

**DONE AND ORDERED**, in Chambers, at Miami, Florida, this 31st day of

January, 2023.

/s/ Edwin G. Torres
EDWIN G. TORRES
United States Magistrate Judge